STATE, RICHARD H. SHIVERS, PROSECUTOR, v. WILLIAM K. NEWTON.

1. That part of "An act to prevent the adulteration and to regulate the sale of milk," (*Pamph. L.* 1882, *p.* 97,) which prohibits the production of impure milk by other means than by adulteration, without regard to the existence of an intent to sell the same, is unconstitutional on the ground that it is legislation on a matter not within the expressed object of the title to the act.

2. The provision in the ninth section of the act which confers upon the state inspector of milk the power to condemn and pour upon the ground or return to the consignor any milk which he finds, upon inspection, to be adulterated, is constitutional.

3. The fourth section of the act provides that in all prosecutions under this act, if the milk shall be shown upon analysis by a member of the board of public analysis of this state or the chemist of the state experiment station, to contain more than eighty-eight per cent. of watery fluids, or to contain less than twelve per cent. of milk solids, such milk shall be deemed, for the purposes of this act, to be adulterated. *Held,* that this section is not intended to operate as a rule of evidence by which the act of the analyst is to be conclusive of the guilt of the defendant in selling adulterated milk, but was intended to prohibit the sale of milk under a certain standard of excellence, and this exercise of authority is within the discretion of the legislature in the exertion of the police power inherent in the state.

4. The complaint for selling and the having in possession with intent to sell, of milk under the standard fixed by the fourth section, should be special, and not in the form of a complaint for selling milk which is in fact adulterated.

This writ brings up the record of a conviction and judgment in proceedings had before James M. Cassidy, a justice of the peace, against the prosecutor, Richard H. Shivers, under the provisions of an act (*Pamph. L.* 1882, *p.* 97,) entitled "An act to prevent the adulteration and to regulate the sale of milk."

The complaint was made by William K. Newton, who was at the time, by the appointment of the state board of health, holding the office of state inspector of milk. He complained that on the 25th of August, 1882, one Richard H. Shivers did violate the provisions of an act to prevent the adulteration and to regulate the sale of milk, approved March 14th, 1882, in this, that said Richard H. Shivers did transport and carry for the purpose of sale, and sell adulterated milk contrary to section 2 of the aforesaid act of the legislature of the State of New Jersey. A warrant was issued for the apprehension of the prosecutor, and a trial followed, resulting in the conviction and judgment already mentioned

Argued at June Term, 1883, before Justices REED and MAGIE.

For the prosecutor, *J. Eugene Troth* and *H. A. Drake.*

For the defendant, *C. V. D. Joline.*

The opinion of the court was delivered by

REED, J. The first reason is directed against the validity of the statute under which the proceedings were taken. The contention is, that the statute is in conflict with the constitution in four aspects, namely: First, that it embraces two objects instead of one; second, that it provides for the arbitrary *divestiture* of the property of the citizen without due process of law; third, that it is a judicial act deciding upon the character and admissibility of testimony; and fourth, that it adjudges a forfeiture of the rights and property of the citi-

zen without a judicial hearing, and judgment without due notice, and without a trial by jury.

In regard to the first point urged against the statute that it embraces two objects, I think it is apparent that the design of the legislature is single, namely, to secure the sale of wholesome milk.

The second section of the act provides for the punishment of those who shall sell or offer for sale, or who shall transport or carry for the purpose of sale, or shall have in possession with intent to sell, any impure, adulterated or unwholesome milk. It further provides for the punishment of those who shall adulterate milk, or who shall keep cows for the production of milk in a crowded or unhealthy condition, or feed the same on food that produces impure, diseased or unwholesome milk, or shall feed cows on distillery waste, usually called swill, or upon any substance in a state of putrefaction or rottenness, or upon any substance of an unwholesome nature.

The third section declares that the addition of water or any other substance is an adulteration, and the milk that is obtained from animals that are fed on distillery waste, &c., or that has been exposed to or contaminated by the emanations, discharges or exhalations from persons sick with any contagious disease by which the health or life of any person may be endangered, is impure.

This is all directed against the production and sale of impure milk.

The subsequent sections fixing the legal standard to which all milk shall be subjected by analysis, fixing the penalties to be imposed for a violation of the act, directing the method of procedure in prosecutions for such violations, and establishing the duties of the public analyst and of the state inspector, are details appropriately directed to the execution of the single design intended to be secured by the legislature. Upon inspection of the body of the statute no incongruous subjects are intermingled within the purview of the constitutional interdiction.

There is a difficulty, however, arising from the manner in

which the act is entitled.   The perplexity springs from the in-accurate particularity with which in the title the scope of the legislation is expressed.   The constitution does not require a detailed but a general expression of the scope of the enact-ment, and the danger of attempting to specialize the *minutiæ* of the legislation is apparent when, as in this act, there is at least one prohibition which is clearly beyond the object indi-cated by the title while clearly within the general object of the legislation.   The title is "An act to prevent the adulteration and to regulate the sale of milk."   Adulteration means to debase by the admixture of foreign materials.   This is not only the literary signification of the word, but its meaning also as defined by the statute itself.   The distinction is drawn with clear lines between adulterated and impure and unwhole-some milk.   The prohibition in the second section of the act is aimed at both the adulteration and the production of un-wholesome milk by other methods.

It is not limited to the sale of adulterated or impure milk, or the having possession with intent to sell, but is also directed at the act of adulteration, and the act of producing by other methods, unwholesome milk.   .

The latter prohibition, is in my judgment, clearly outside of the object of the legislation as expressed in the title.

As to the remaining part of the statute, I think it is cov-ered by the title.

The regulation of the sale of milk is a general, but a suffi-cient expression of the enactment of all the guards thrown by this act around the vending of an article of daily consump-tion.   The provision for inspecting it, the prohibition against selling it if impure or under a certain standard, is within the general notion expressed by the terms regulating its sale.

And so also the having possession of this quality of milk with an intent to sell, is equally within the power of legisla-tive interdiction under this title.   The offensive part of the prohibited act is the intent to sell, the design to perpetrate the act, the regulation of which is the expressed object of the leg-islation.

The presence of the prohibition already stated as foreign to the title, upon a well-settled rule of constitutional construction, does not vitiate the remaining portion of the act. It can be eliminated from the act, leaving the residue of the act operative, and it is within the valid provisions of the act that the prohibition upon which these prosecutions are grounded is found.

The second branch of the constitutional objection to the statute is grounded upon the provisions of the ninth section, which empowers the milk inspector, in case he shall, upon inspection find any can, vessel or package which has been adulterated, * * * * to condemn the same and pour the contents of such can or vessel upon the ground or return the same to the consignor. This portion of the act is not involved in the present proceeding because the institution of the information is entirely independent of the provision for the condemnation and destruction of the milk itself. But as the objection has been elaborately argued, it may be of use to remark that this clause does not seem obnoxious to the criticism to which it has been subjected.

That the title to all private property is held subject to the paramount consideration of the health and safety of the entire public, is too well settled for discussion. It is equally well established that the authority inherent in the state under the title of police power, enables the legislature to fix upon certain kinds of property or upon the manner in which property is used, the brand of noxiousness to public safety or health. And when the character of a nuisance has been so affixed to property or its use, it is a frequent exercise of legislative power in addition to the visitation of a penalty to be recovered by action, or imprisonment upon conviction under indictment to also provide for the abatement of the nuisance itself by means of a seizure and destruction of the property itself. The exercise of this power is illustrated by the numerous statutes in other states, which have received judicial sanction, among others, those providing for the seizure and destruction of liquor, the arrest and sale of straying animals, the impound-

ing and destruction of dogs, and for the seizure and destruction of illegally baked bread. *Sedg. Stat. & Const. Law* 434 *note*, 455 *note*. In the case of *Weller* v. *Snover*, 13 *Vroom* 341, this court sanctioned the act of a fish warden in destroying a fish-basket by virtue of the act of 1871, (*Rev.*, *p.* 433,) and the sanction is put upon the ground of the right to authorize an officer to abate a nuisance.

In the section of the act now under inspection, the authority of the officer to destroy rests upon the fact of the adulteration or impurity of the milk, and the section further provides that if a subsequent analysis shall disclose the fact that the officer was mistaken in the result of his examination, the owner is to be paid the value of the article destroyed.

The next constitutional objection is leveled at the provisions contained in the fourth and eighth sections of the act.

By the fourth section it is enacted that in all prosecutions under this act, if the milk shall be shown upon analysis by a member of the council of public analysts of this state or the chemist of the state experiment station, to contain more than eighty-eight per cent. of watery fluids or to contain less than twelve per cent. of milk solids, such milk shall be deemed for the purposes of this act to be adulterated.

The objection raised against this section consists in the force which it is alleged is given to the analysis of the analyst. The contention is that the result reached by the chemist is by force of the act made conclusive evidence of the guilt of the defendant, and that such an exertion of power is beyond the ability of the legislature.

In interpreting the significance of this clause, I think it is obvious that its design is to include within the kind of prohibited milk such as shall not possess a certain standard of excellence. I think the standard so fixed, was not intended to mark the absolute line between pure and diluted milk. The placing of the standard was to set up a mark to indicate where, in the judgment of the legislature, the salubrity or fair commercial value of milk ceased to exist. The section does not mean that the result of the analysis shall be conclusive

evidence that the milk, has in fact, been adulterated, but it does mean that milk below a certain standard shall not be sold; therefore, when analysis discloses that condition, it shall be, for the purposes of the act, considered adulterated, so that by force of the other sections it thereby becomes prohibited.

In the State of Massachusetts, their act relative to the inspection of milk, contains a clause similar to the one now in question, the difference being that ours provides for an analysis by a state officer and theirs does not name the persons who may make the analysis.

The Supreme Court of that state in the case of *Commonwealth* v. *Evans*, 132 *Mass.* 11, held that this legislation was constitutional and belonged to the class of police regulations designed to prevent frauds and protect the health of the people.

The clause as contained in the Massachusetts statute is also found in the statutes of Rhode Island. In construing it in the recent case of *State of Rhode Island* v. *Smith*, 27 *Alb. L. J.* 478, it was held that this clause was not intended as a rule of evidence but defined a new offence.

It is true, that the clause as it exists in the present act, provides that it shall be shown upon analysis of one of certain persons, while in the clauses in the acts which have been construed, the language is, shall be shown by analysis.

But the fact upon which the prohibition is based, is the scientific determination that the milk is below a certain standard of excellence. An analysis is supposed to be a determination arrived at with accuracy because scientific.

The case against the defendant instead of being possibly made by any chemist, as in the other acts, must here be made by some one particular chemist. But it is upon the fact of the analysis that the case rests. An analysis means a scientific and therefore accurate ascertainment of the elements and their proportion contained in the fluid submitted for examination. The fact that a certain man made an examination, disclosing the existence of a certain proportion of solid and fluid elements

in the milk amounts to nothing unless it is an analysis; an accurate ascertainment of the elements by chemical processes.

The method of making the examination, by what processes the elements were dispersed, with what care weighed, how the tests were guarded, and indeed any circumstance bearing upon the question whether the result reached by the chemist was an analysis, is relevant in the trial of the cause. In this view, I think the legislation was not opposed to any fundamental or constitutional restriction.

It is further objected that the eighth section of the act, which provides that a certificate of any member of the council of public analysts or chemist of the state experiment station, given under his hand and seal, and sworn to and subscribed before any justice of the peace or notary public in this state, shall be taken and accepted as *prima facie* evidence, is objectionable.

The validity of this provision does not arise in this case because the chemist himself was examined and cross-examined at the trial. *Commonwealth* v. *Waite*, 11 *Allen* 264.

The last of the constitutional objections to the act is that it makes no provision for a trial by jury. The law has so frequently been stated to the effect that the enforcement of regulations of the kind included within the statute by summary proceedings before a magistrate alone, was not within the constitutional guaranty of trial by jury, that I think further remark would be profitless.

Besides the objections urged against the act itself, there are a number of reasons directed against the several steps taken in the prosecution of the proceedings before the magistrate.

The first is that the complaint is indefinite and made up of conclusions of fact. The complaint was this: That one Richard H. Shivers did violate the provisions of an act entitled An act to prevent the adulteration and to regulate the sale of milk in this, that said R. H. S. did transport and carry for the purpose of sale, and did offer for sale and sell adulterated milk, contrary to the provisions of section 2 of the aforesaid act of the legislature of the State of New Jersey.

Now I am of opinion that this complaint, described with sufficient precision, a violation of the statute in the selling or the having in possession with intent to sell, milk which was in fact adulterated by the admixture of any foreign substance. I do not think it describes a violation of the statute in selling. or the having in possession, with intent to sell, of milk which shall be shown upon analysis to contain less than twelve per cent. milk solids. The milk declared to be adulterated in the second section is so in fact. The milk mentioned in the fourth section may not be in fact diluted or debased. I have already said that the offence under the last section is the sale or the intent to sell milk under a certain standard as registered by an analysis. I am clear that in prosecutions for the latter offence, the complaint should show the act of the defendant in regard to milk shown by analysis to contain more than eighty-eight per centum of watery fluids and less than twelve per centum of milk solids. And prudent pleading would disclose the name of the member of the council of public analysts—if by one of them—by whom the test was made.

Now, the complaint is not the subject of criticism, on the ground stated in the reason, because it does set out a violation of the act. But the construction above given as to the kind of milk, the selling of which is covered by the complaint, gives a significance to another reason which is fatal to the conviction in the cause.

In that reason, it is urged that there is no evidence to sustain the conviction. Now the conviction is for the offence set forth in the complaint. That, as we have seen, is for the sale of milk in fact adulterated.

All the evidence in the cause was to the effect only that analysis showed the undue presence of watery fluids and absence of milk solids in the tested milk, according to the standard erected by the act. There was no insistment that there was actual adulteration, or that the analysis showed such poverty of milk solids as no pure milk could have exhibited. The cause was tried and the rulings admitting and rejecting testimony, were made upon the notion that the

gist of the offence was in regard to the last-mentioned kind of milk. There was, therefore, no evidence to support the conviction, and it must be set aside.

The two other cases argued with the above are in the same posture, and for the same reasons the convictions in those cases are set aside.